## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

LEONARD LEE HALEY,

    Plaintiff,

    v.

HOLLY HOOVER, NP,
DR. ASRESAHEGN GETACHEW,
DR. HOWARD COOK,
NURSE LLEWELLYN,
D.O.C. (DPSCS) COMMISSIONER OF
CORRECTION,
FRANK B. BISHOP, JR.,
JEFF NINES, *Warden*,
DR. ASHOK KRISHNASWAMY and
CORIZON NBCI MEDICAL DEPT.

    Defendants.

Civil Action No.  TDC-22-1191

### MEMORANDUM OPINION

Leonard Lee Haley, an inmate incarcerated at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, has filed this civil action pursuant to 42 U.S.C. § 1983 in which he alleges that he has been denied adequate medical care.  Pending before this Court is a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment filed by Defendants Dr. Asresahegn Getachew, Nurse Holly Hoover, and Nurse Lynae Sue Llewellyn (collectively, "the Medical Defendants") and Defendant Corizon Health, Inc. ("Corizon") and a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment filed by Defendants Commissioner of Correction Annie Harvey, Assistant Commissioner of Correction and former NBCI Warden Frank B. Bishop, Jr., and NBCI Warden Jeff Nines (collectively, "the Correctional Defendants").  Both Motions are fully briefed.  The case has been stayed as to Corizon, so the Motions will not be

considered as to Corizon. Defendants Dr. Howard Cook and Dr. Ashok Krishnamurthy have filed separate motions which will be addressed separately. Having reviewed the submitted materials, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, both Motions will be GRANTED.

**BACKGROUND**

## I.      Initial Treatment

On May 20, 2019, Haley was attacked by another inmate and was stabbed in the foot and also suffered a broken leg. According to Haley, that day he was evaluated by Nurse Holly Hoover, who is referred to in the medical records by her former name, Holly Pierce. Haley alleges that Hoover stitched or stapled the wound but did not prescribe any pain medication or order x-rays at that time. Two days later, the wound was swollen and discolored.

According to Haley's medical records, on the day of the incident he was seen by a different nurse, Nurse Michael Klepitch, who observed small puncture wounds on Haley's right ankle and left knee. Klepitch cleaned the wounds and applied a steri-strip to the knee and a pressure dressing to the right ankle. Haley was provided with a tetanus shot. At that time, Haley had an active prescription for Tegretol, a pain medication. Hoover has stated that she has no recollection of treating Haley during this time frame, but she is listed on the medical record for that visit, which also references Klepitch, as the medical "provider" and as having ordered that his wound be checked in two days. Med. Records at 69, Med. Defs.' Mot. Dismiss Ex. A-1, ECF No. 24-4.

Although there are no medical records showing when or who stapled the wound, during an examination on May 25, 2019, Nurse Lynae Llewellyn observed the staples and felt swelling in his leg while changing the dressing. Llewellyn changed his dressing again on May 26, 2019. Llewelyn's role was limited to dressing changes, and she did not have the authority to prescribe

2

pain medication or x-rays.  Haley alleges that he again was not provided with pain medication, and that he did not receive an x-ray until six weeks later. He asserts that the x-ray showed a broken tibia that had healed improperly.

On June 11, 2029, Haley submitted a sick call request seeking treatment relating to his ankle and foot pain.  On June 25, 2019, Hoover examined Haley.  According to the medical records, Haley reported that despite rest and pain medication (ibuprofen) the discomfort in his ankle and foot was not improving.  Hoover noted surgical scars on Haley's right ankle from a previous surgery.  She ordered x-rays and prescribed Naproxen for pain.  At that time, Haley still had an active prescription for Tegretol.

The x-rays were taken on July 8, 2019.  The radiology report stated that Haley had a healing fracture of the distal fibula with callus formation and had hardware from a prior surgery in that area.  No evidence of joint dislocation or subluxation was observed.  Hoover saw Haley on July 12, 2019 to review the results of the x-rays and, according to Haley, stated that he would need surgery because the bone had not healed correctly.  At that point, Haley's right foot had tenderness and swelling, and Hoover assessed Haley as suffering from a closed fractured fibula.  She ordered rest, ice, and elevation when possible.  Haley declined a splint, and Hoover offered an ace wrap and crutches and issued an order for restrictions on activity.  She also prescribed for a one-month period Ultram, also known as Tramadol, a narcotic, opioid pain reliever used to treat moderate to severe pain.  Because Ultram has a high risk of addiction and dependence, its prescriptions are carefully regulated within correctional facilities for security reasons, and it is a non-formulary drug that requires approval before it can be prescribed.  At this appointment, Hoover also prescribed Tylenol-Codeine No. 3, for the period from July 12, 2019 to July 16, 2019.  Tylenol-Codeine No. 3 is a combination of acetaminophen and codeine used to treat mild to moderate pain.  At the same

3

time, Haley also had an active prescription for Naproxen through October 25, 2019.  Lastly, Hoover submitted a request for an orthopedic consultation, which was approved.

Hoover or another medical provider requested renewals of Haley's prescription for Ultram on a monthly basis from August 2019 until August 2020, which were approved by Dr. Getachew and received by Haley.  At various times during this time period, Haley inquired about his pain medications, but the Ultram was consistently renewed.

## II.    Orthopedic Consultation and Surgery

Following the July 12, 2019 referral for an orthopedic consultation, Haley submitted an Administrative Remedy Procedure complaint ("ARP") to the Warden relating to the alleged lack of pain medication and the delay in receiving an x-ray.  On August 8, 2019, Haley submitted a sick call request complaining of pain, but he failed to appear for his appointment.  Haley had a telemedicine orthopedic consultation scheduled for August 21, 2019, but it was cancelled due to technical difficulties with the equipment.  On October 1, 2019, during rounds in the segregation unit where Haley was incarcerated, he asked about the scheduling of his surgery.  Hoover next saw Haley on November 22, 2019, when he reported ankle discomfort and had tenderness and pain in his right knee and foot.  At that point, the orthopedic consultation was already scheduled.  Hoover requested a renewal of Haley's prescription for Ultram, which was approved by Dr. Getachew.

Haley had his telemedicine orthopedic consultation with Dr. Krishnaswamy, an orthopedist, on February 26, 2020.  Dr. Krishnaswamy asked that the prior ankle x-rays be sent to him, that new x-rays be taken, and that another telemedicine appointment be scheduled after the additional diagnostic testing.

On April 24, 2020, Haley submitted another ARP in which he again complained about Hoover's treatment, alleged that she was withholding pain medication in retaliation against him,

4

and asserted that his recent orthopedic consultation with Dr. Krishnaswamy had not resulted in any treatment to address his leg pain. He requested an appointment with Dr. Getachew rather than Hoover. On review, the Warden found the ARP partially meritorious because of the delays in treatment, but by the time the ARP was reviewed, Haley had received another orthopedic consultation on May 4, 2020. By the time Haley's appeal of this ARP was reviewed by the Commissioner of Correction, Haley had received another orthopedic consultation on August 20, 2020.

During the May 4, 2020 telemedicine consultation, Dr. Krishnaswamy reported that the x-rays showed a screw from a prior surgery that could be removed to decrease Haley's discomfort. The same day, Hoover made a request that Haley's prescriptions for Ultram be continued, which was approved.

On July 28, 2020, Haley had another x-ray of his right ankle pursuant to an order placed by Hoover. Like the first x-ray, this one showed no acute fracture, dislocation, or subluxation, and no acute osseous abnormalities. There was evidence of an old fracture of calcaneus with post-surgical hardware in place.

On August 5, 2020, Hoover ordered blood work for Haley, which included a check on Ultram levels. On August 19, 2020, Haley refused the blood work.

On August 20, 2020, Haley was seen by Dr. Krishnaswamy for another telemedicine consultation. Dr. Krishnaswamy noted the results of the radiology report but stated that he wanted to review the x-ray himself and was considering whether the fibula plate would need to be removed. He planned to have a follow-up consultation.

On August 28, 2020, Hoover saw Haley for follow-up visit. Although Haley requested Ultram, Haley's prescription for Ultram had expired on August 23, 2020, after Haley refused the

lab work to ensure he was taking the medication as prescribed. Hoover thus planned to treat Haley's pain with ibuprofen and Tylenol and prescribed both. She also submitted a consultation request to orthopedics for removal of the hardware in his leg, which was approved. During another visit on November 4, 2020, Hoover noted that Haley had active prescriptions for Tylenol and ibuprofen.

On December 1, 2020, Hoover had a surgical procedure conducted by Dr. Krishnaswamy during which he removed a heterotopic bone and attempted to remove a plate and screws and to apply a splint. Dr. Krishnaswamy was not able to complete the surgery because he did not have the correct instruments. According to Haley, Dr. Krishnaswamy removed a bone from Haley's foot without Haley's consent, and Dr. Krishnaswamy told him that, "he messed up because he was without his surgical tools, and had to modify the surgery." Compl. at 6-7, ECF No. 1.

While in the infirmary to recover, Haley received Tylenol-Codeine No. 3. On December 3, 2020, a physician made a request that Haley receive Ultram for seven days, which Dr. Getachew approved. On December 6, 2020, Haley was seen by a nurse, who upon noting that the Ultram request had not yet been approved, prescribed Motrin for the pain.

On December 13, 2020, a nurse noted that wound care was not completed due to security concerns arising from broken computer panels, which resulted in cell doors opening on their own without custody control. On December 20, 2020, Haley refused a surgical follow-up visit with Hoover. On December 23, 2020, he refused a visit for a wound assessment and staple removal.

According to Haley, by December 27, 2020, his foot had become infected, which he attributes to the "botched surgery" and "medical staff not changing bandage dressing or irrigating the wound." *Id.* He states that on that date, a correctional officer called a nurse to take Haley to the medical unit. The nurse then called Dr. Getachew, who saw the infected foot and directed that

6

the stitches be removed and that Haley be provide a "pain shot." *Id.* According to the medical records, this incident occurred on December 29, 2019. At that time, the wound was cleaned with antibiotic cream and a dressing was applied, and Haley was given an injection of the antibiotic Rocephin and the nonsteroidal anti-inflammatory Toradol for pain relief. According to Dr. Getachew, the infection likely occurred because of Haley's refusals of wound care, and the medical steps taken once it was discovered were appropriate. Dr. Getachew states that the only other personal involvement he had in Haley's care was the approval of non-formulary drug requests submitted by other providers to prescribe Ultram.

That same day, Hoover saw Haley, who stated that he was refusing to have a second surgery to remove the screw. Hoover prescribed an intramuscular antibiotic injection (Rocephin) twice a day for three days and dressing changes twice daily until the wound healed. She also prescribed ibuprofen as needed. That evening, Haley refused his second injection of Rocephin. On December 30, 2020, Haley again refused the antibiotic injection, and he stated that he preferred to take a pill. Hoover then ordered the oral antibiotic Keflex. Haley also received another x-ray of his right foot. In January 2021, Haley received Tylenol and ibuprofen.

On March 2, 2021, Dr. Michael Berger, a podiatrist, evaluated Haley for right heel pain, assessed Haley as suffering from chronic pain, and recommended that he be provided non-steroidal anti-inflammatory drugs, not narcotics, for pain control. He also noted that Haley may need to undergo a joint fusion surgery to address his pain, but Haley stated that he was unsure whether he wanted to undergo any additional invasive procedures. Dr. Berger ordered an ankle brace and follow up as necessary.

On March 5, 2021, Dr. Benhur Mohammed evaluated Haley for complaints of right foot pain and Haley's request for renewal of his prescription for Ultram. Dr. Mohammed prescribed

7

ibuprofen from March 5 through 19 because Haley's Ultram prescription had previously been discontinued due to non-adherence.

On April 30, 2021, Dr. Howard Cook requested that Haley be provided Ultram for 30 days. On May 4, 2021, Dr. Getachew approved the request, and Haley was prescribed Ultram until the end of July 2021.

## III.    The Complaint

On May 18, 2022, Haley filed the Complaint in this case. In Count I, he asserts a claim that Defendants have engaged in deliberate indifference to his medical needs in violation of the Eighth Amendment, based primarily on the failure to provide adequate treatment for his pain and the "botched" surgery. Compl. at 4. In Count II, he asserts a claim that he was subjected to discrimination based on his status as a prisoner in segregation in violation of the Equal Protection Clause of the Fourteenth Amendment, based on his claim that other prisoners not in segregation have had their medical issues adequately addressed.

**DISCUSSION**

In their Motions, Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. The Medical Defendants argue that the record evidence demonstrates that there is no valid claim against them for deliberate indifference to a serious medical need. The Correctional Defendants assert that their Motion should be granted because (1) Haley has failed to allege or identify evidence of personal participation by any of the named Correctional Defendants in any of the alleged wrongdoing; (2) he has failed to allege facts or identify evidence that any of them engaged in deliberate indifference to a serious medical need; and (3) the Correctional Defendants are entitled to qualified immunity.

8

## I.    Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

When deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents. *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Courts must treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the titles of Defendants' Motions. To show that a reasonable opportunity for discovery has not been provided, the nonmoving party must file an affidavit or declaration under Rule 56(d), or an equivalent filing, explaining why "for

specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002). In opposing the Motions, Haley has attached an affidavit and has addressed Defendants' arguments substantively based on the available material. Although he generally requested discovery "so the jury can properly decide the case," Opp'n at 18, ECF No. 30, he does not describe with specificity what additional discovery he will need, claim that the discovery is necessary before resolution of the Motions, or explain why that would be the case. Where Haley has not met the standard to require discovery before resolution of the Motions, the Court will construe Defendants' Motions as motions for summary judgment for purposes of the arguments requiring consideration of the submitted declarations and exhibits.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, "with all justifiable inferences" drawn in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.,* 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.*

## II.     Equal Protection

In Count II, Haley alleges that he "has been deliberately discriminated against as a segregation prisoner" and that other prisoners "have been seen and had their serious problems handled." Compl. at 4. The Equal Protection Clause of the Fourteenth Amendment generally requires the government to treat similarly situated people alike. *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To show that equal protection rights were violated, a plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Veney v. Wyche,* 293 F.3d 726, 730-31 (4th Cir. 2002) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). Upon such a showing, the court must "determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.* (quoting *Morrison*, 239 F.3d at 654).

Here, Haley fails to meet the first requirement. Haley has provided no factual allegations about other, allegedly similarly situated inmates, much less factual allegations that support his claim that he was treated differently than other inmates. Accordingly, the Court will grant the Motion as to the claims against all defendants in Count II.

## III.     Medical Defendants

The Medical Defendants argue that Haley has neither alleged nor presented sufficient facts to support a claim that any of the named Medical Defendants provided inadequate medical care in violation of the Eighth Amendment, which protects prisoners from "cruel and unusual punishment" and prohibits "unnecessary and wanton infliction of pain" against inmates. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). In order to state an Eighth Amendment claim for

inadequate medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106. Such deliberate indifference requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* "Deliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto*, 841 F.3d at 225 (internal alterations omitted). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.* Moreover, even if the requisite subjective knowledge is established, an official may avoid liability if the official

"responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

A review of Haley's allegations and the record evidence establishes that Haley has not provided a sufficient basis to support his deliberate indifference claim. While the record is clear that Haley has an objectively serious medical need, the evidence does not support a finding that any of the named Medical Defendants were subjectively deliberately indifferent to those needs.

Haley primarily focuses on Hoover and alleges that she failed to provide him with pain medication after she initially stitched his wounds from the May 20, 2019 incident, that she did not arrange for an x-ray to occur sooner than six weeks after the incident, and that she continued to fail to provide pain medication through the time that he received surgery in December 2020.

Although the parties disagree on whether Hoover or another nurse stitched Haley's wounds following the May 2019 incident, even assuming that Hoover stitched or stapled the wounds and that she did not order pain medications or an x-ray until approximately one month later, on June 25, 2019, the record does not support a finding that those omissions were the result of deliberate indifference.   At that time of the incident on May 20, 2019, Haley already had an active prescription for Tegretol, a medication for pain relief.  Moreover, the medical records demonstrate that the first time Hoover saw Haley after that initial encounter, on June 25, 2019, she examined his foot, ordered an x-ray, and prescribed Naproxen for pain relief.  Notably, after the x-ray occurred in July 2019, Hoover ordered the narcotic pain medication Ultram as well as Tylenol No. 3 and submitted a consultation request for Haley to see an orthopedist.  Hoover or another medical provider then made regular requests for renewal of Haley's Ultram prescription each month from August 2019 to August 2020, which were approved by Dr. Getachew.  Although Haley's prescription for Ultram was discontinued on August 23, 2020 after he refused blood work that

13

would have confirmed whether he was taking Ultram as prescribed, Hoover prescribed alternative pain medications, ibuprofen and Tylenol. Even after the surgery and infection in December 2020, a physician ordered Ultram for Haley on a temporary basis, and Hoover ordered antibiotics and pain medications. Given this consistent history of providing pain medications from June 2019 forward, and the fact that that Hoover herself ordered the x-ray only a few weeks after the incident, the record shows that the delay in scheduling a follow-up appointment and taking those steps could be negligence at worst and does not support a finding that Hoover had the subjective intent necessary to be found to have acted with a deliberate indifference to serious medical needs.

As for Dr. Getachew, in the Complaint, the only specific allegation about him is that after Haley's foot became infected following the December 2020 surgery, Dr. Getachew examined Haley and ordered that the stitches be removed and that Haley receive pain medication. According to the medical records, Dr. Getachew issued these orders and also directed that Haley receive antibiotics to treat the infection. Where Dr. Getachew provided prompt and appropriate medical direction in the one episode referenced in the Complaint in which he was involved, there is no evidence that Dr. Getachew personally acted with deliberate indifference to Haley's medical needs.

To the extent that Haley seeks to hold Dr. Getachew generally responsible based on his role as the Corizon Medical Director, liability under § 1983 must be based on the defendant's personal conduct, because there is no vicarious liability or *respondeat superior* liability for § 1983 claims. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017). To hold a defendant liable as a supervisor, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that the subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge

14

was so inadequate as to show deliberate indifference to or tacit authorization of the alleged

offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction

and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud,* 13 F.3d 791,

799 (4th Cir. 1994). Here, Haley has not alleged facts or identified evidence showing that Dr.

Getachew had knowledge of the issues underlying his Complaint. Although the medical records

show that Dr. Getachew was presented with requests for approval of prescriptions for Ultram, Dr.

Getachew approved those requests. Accordingly, the Court finds that there is insufficient basis to

support a claim of deliberate indifference to serious medical needs against Dr. Getachew.

  As for Nurse Llewellyn, against whom Haley's only allegation is that she felt swelling in

his leg shortly after he first received his stiches in May 2019, in his memorandum in opposition to

the Motions, Haley stated that "Plaintiff now relinquishes his claims against Defendant Nurse

Llewellyn, LPN." Opp'n at 11. Accordingly, the Court need not address the allegations against

Nurse Llewellyn and will dismiss the claims against her.

  To the extent that the Complaint can be construed to allege a constitutional violation arising

from the delay between the initial incident and the surgery, there is no evidence that the delay was

attributable to Hoover or Dr. Getachew. While there were certain medical appointments that took

longer to schedule than would be ideal, there is no basis to conclude that Hoover was responsible

for any delays after the initial x-ray appointment; rather she requested orthopedic consultations on

multiple occasions. There is also no basis to conclude that the procedure was delayed by Dr.

Getachew, such as based on a failure to approve a procedure in a timely manner. Under these

circumstances, there is no basis to conclude that either of these Medical Defendants had the

subjective intent necessary to support a deliberate indifference claim on this basis. For these

reasons, the Court will grant the Motion as to the Eighth Amendment claims against the Medical Defendants.

## IV.  Correctional Defendants

Haley's claims against Commissioner Harvey, Assistant Commissioner Bishop, and Warden Nines in their official capacities fail because they are barred by Eleventh Amendment immunity.   Under the Eleventh Amendment to the Constitution, absent consent, a state, its agencies, and departments are immune from suits in federal court brought by its citizens or the citizens of another state. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-201(a) (LexisNexis 2021), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Claims against state officials in their official capacities are claims against the State itself. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). Thus, Haley's claims against the Correctional Defendants in their official capacities are barred by the Eleventh Amendment and will be dismissed.

Haley's claims against the Correctional Defendants in their individual capacities also fail. As discussed, above, it is firmly established that the doctrine of vicarious liability, or *respondeat superior*, does not apply to § 1983 claims, so Haley must establish that each Correctional Defendant personally participated in the allegedly deficient medical care or had supervisory liability for that care. *See Wilcox*, 877 F.3d at 170; *Shaw*, 13 F.3d at 799. There are no allegations that any of the Correctional Defendants personally participated in the decisions relating to medical care of medical care. Indeed, there is no allegation or evidence that any of the Correctional Defendants prevented Haley from seeing medical providers. As for supervisory liability, in the Maryland prison system, inmate medical care is provided by privately contracted medical care

16

providers. As the Correctional Defendants have stated in their declarations, they do not oversee decisions made by the medical providers and have no "training or authority to direct patient care," to "recommend treatment," or to "administer medical care." *See, e.g.*, Harvey Decl. ¶ 3, Corr. Defs.' Mot. Ex. 2, ECF No. 27-3. These assertions are corroborated by the Clinical Services Administrative Manual, which states that "[c]linical decisions are the sole responsibility of responsible health care professionals," and that it is the DPSCS Medical Director who "has responsibility for making and approving all medical decisions regarding the care provided to the inmates of the institution." Admin. Manual at 1, Corr. Defs.' Mot. Ex 1, ECF No. 27-2. Thus, the Correctional Defendants lacked supervisory authority over the medical care and cannot be held liable pursuant to supervisory liability.

Although Haley notes that certain Correctional Defendants received or reviewed one of his ARPs or appeals of an ARP, those actions do not provide a basis for § 1983 liability. On August 19, 2019, Bishop, as the NBCI Warden, responded to ARP No. NBCI-1506-19 in which Haley complained that Hoover did not provide adequate medical care after the May 20, 2019 stabbing and acknowledged that the ARP was meritorious in part because based on the medical records, a sick call request made on June 11, 2019 did not result in medical care until June 25, 2019,which was outside the appropriate time frame. However, the Warden's response also noted that the medical records showed that Haley had received pain medications and an x-ray and had been scheduled for an orthopedic consultation, and that he reminded medical staff of the need to schedule sick call appointments in the appropriate time frame. When Haley appealed that ARP to the Commissioner of Correction, the Commissioner found that the orthopedic consultation scheduled for August 21, 2019 had been canceled and still had not occurred as of November 26, 2019. The Commissioner then

17

directed Warden Bishop to instruct the medical staff to comply with required procedures, and Warden Nines confirmed that he had done so in a memorandum of January 15, 2020.

In ARP No. NBCI-0884-20, filed on April 20, 2020, Haley complained about the treatment of his leg. In reviewing the ARP, the Warden noted that orthopedic consultation occurred on February 26, 2020, more tests were ordered, and on May 4, 2020 there was an orthopedic recommendation for the removal of the hardware in Haley's leg, which was under review by the medical committee. While the Warden found the ARP meritorious in part because of the time period between orthopedic appointments and reminded medical staff to provide timely appointments, on appeal the Commissioner noted on September 11, 2020 that the next orthopedic appointment had occurred on August 20, 2020, so no further action was required and the ARP was dismissed.

These ARPs and their resolution reflect that while the Warden and the Commissioner were aware of some delays in Haley receiving medical appointments, particularly orthopedic consultations, they also show that the Correctional Defendants were also aware from medical records that Haley had received pain medication, an x-ray, and orthopedic consultations, that on multiple occasions the Warden reminded medical staff to provide timely appointments, and that the reminders and resolutions of the ARPs were followed by the scheduling of appointments. On this record, the Court does not find a basis to conclude that the Correctional Defendants acted with deliberate indifference to serious medical needs based on their actions in relation to the ARPs. The Court therefore need not address the Correctional Defendants' additional arguments in support of their Motion and will grant the Motion.

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss, or in the Alternative, Motions for Summary Judgment will be GRANTED.  A separate Order shall issue.


Date:   September 20, 2023

THEODORE D. CHUANG
United States District Judge